# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

### *People v. Bonilla*, 2017 IL App (3d) 160457

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DERRICK BONILLA, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-16-0457 |
| Filed | June 14, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 15-CF-225; the Hon. Frank R. Fuhr, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John L. McGehee, State's Attorney, of Rock Island (Patrick Delfino, Lawrence M. Bauer, and Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Michael J. Pelletier, Peter A. Carusona, and Katherine M. Strohl, of State Appellate Defender's Office, of Ottawa, for appellee. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justice O'Brien concurred in the judgment and opinion.<br>Justice Wright dissented, with opinion. |

**OPINION**

¶ 1     Defendant, Derrick Bonilla, was charged with unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(c) (West 2014)). He filed a motion to quash warrant and suppress evidence (motion to suppress), which the trial court granted after a hearing. The State appeals. We affirm the trial court's judgment.

¶ 2                                     FACTS

¶ 3     The facts in this case are not in dispute and were stipulated to as follows by the parties at the hearing on the motion to suppress. Police officers had received a tip that drugs were being sold out of apartment 304 of the Pheasant Ridge Apartment Complex in Moline, Illinois. Acting on that tip, on March 19, 2015, the officers brought a trained drug-detection dog to that location. The exterior doors leading into the apartment building's common-area hallways were not locked, and there was no lock, pass card, entry system, or anything whatsoever on the closed exterior doors of the apartment building that would prevent any person off the street from entering into the common-area hallways of the apartment building. Once inside the apartment building, canine officer Genisio walked his drug-detection dog down some of the common-area hallways. The first area that the dog was walked through was the second floor common-area hallway, which included apartments 201, 202, 203, and 204. The dog showed no interest in that hallway and did not alert on any of the doorways. The next area Officer Genisio walked his dog through was the third floor common-area hallway, which included apartments 301, 302, 303, and 304. The dog showed no interest in apartments 301, 302, or 303. As the dog came to apartment 304, however, the dog moved back and forth in the doorway, sniffed at the bottom of the door, and signaled a positive alert for the presence of illegal drugs. The police officers obtained a search warrant for apartment 304 based upon the drug-detection dog's alert. After obtaining the search warrant, the officers searched the apartment and found a quantity of cannabis and certain other items. Defendant, who lived in apartment 304, was later arrested and charged with unlawful possession of cannabis with intent to deliver.

¶ 4     In June 2015, defendant filed the instant motion to suppress. A hearing was held on the motion in August 2016. As noted above, the parties stipulated to the facts for the hearing and no additional testimony or other evidence was presented. At the conclusion of the hearing, after listening to the arguments of the attorneys, the trial court granted the motion to suppress. In so doing, the trial court stated:

> "But I think whether you are doing it as a privacy interest under *Kylo* [*sic*] [*Kyllo v. United States*, 533 U.S. 27 (2001)] or a curtilage property interest under *Jardines* [*Florida v. Jardines*, 569 U.S. 1, 133 S. Ct. 1409 (2013)], I think it would just be unfair to say you can't come up on a person who lives in a single family residence and sniff his door but you can go into someone's hallway and sniff their door if they happen to live in an apartment. That's a distinction with an unfair difference. So I'm granting the motion."

¶ 5     After the State's oral motion to reconsider was denied, the State appealed. The State did not file a separate certificate of impairment but did set forth in its notice of appeal that the granting of defendant's motion to suppress had the substantive effect of dismissing the charges.

¶ 6                                                          ANALYSIS

¶ 7          On appeal, the State argues that the trial court erred in granting defendant's motion to suppress evidence. The State asserts, although not necessarily in the order that follows, that the motion to suppress should have been denied because (1) the common-area hallway in front of defendant's apartment door, where the alleged search took place, did not constitute curtilage under the law, (2) defendant had no reasonable expectation of privacy in the common-area hallway or in the air or odor of cannabis emanating from under his apartment door, (3) neither the United States Supreme Court's ruling in *Jardines* nor the Illinois Supreme Court's ruling in *Burns* (*People v. Burns*, 2016 IL 118973, ¶¶ 31-45) supports the trial court's grant of the motion to suppress in the instant case, (4) under the established precedent, the police dog sniff in this case was not a search for purposes of the fourth amendment and was different from the thermal imaging scan that was condemned by the United States Supreme Court in *Kyllo*, and (5) even if this court finds that the alleged search violated the fourth amendment, the good faith exception to the exclusionary rule operates to avoid suppression of the evidence seized under the search warrant in this case since the police were acting in reliance upon the legal landscape as it existed at the time with respect to the use of drug-detection dogs in areas that were open to the general public. For all of the reasons set forth, the State asks that we reverse the trial court's grant of the motion to suppress and that we remand this case for further proceedings.

¶ 8          Defendant argues that the trial court's ruling was proper and should be upheld. Defendant asserts that the motion to suppress was correctly granted because the police officer physically intruded, without an implied license, on the constitutionally protected curtilage just outside of defendant's apartment door to conduct a warrantless search with a drug-detection dog. According to defendant, it makes no difference in this case on the determination of curtilage whether the main entry to the apartment building was locked or unlocked. Defendant acknowledges that the police officer, like any other member of the public, had an implied license to approach defendant's apartment and knock on the front door but claims that the officer exceeded the scope of that license by approaching with a trained drug-detection dog for the sole purpose of detecting illegal activity within the apartment. Defendant asserts further that the good faith exception does not apply in this case because the police officer could not have reasonably believed under any United States precedent that his actions were authorized. For all of the reasons stated, defendant asks that we affirm the trial court's suppression order.

¶ 9          In general, a reviewing court applies a two-part standard of review to a trial court's ruling on a motion to suppress evidence. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *People v. Gaytan*, 2015 IL 116223, ¶ 18. Under that two-part standard, the trial court's findings of fact are given great deference and will not be reversed on appeal unless they are against the manifest weight of the evidence (*Burns*, 2016 IL 118973, ¶ 15), but the trial court's ultimate legal ruling of whether reasonable suspicion or probable cause exists and whether suppression is warranted is subject to *de novo* review on appeal (*Id.* ¶ 16; *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001)). In this particular case, however, the parties stipulated to the facts in the trial court and raised only a question of law at the hearing on the motion to suppress. The standard of review in this appeal, therefore, is *de novo* because we are being called upon to review the trial court's legal ruling on the question of law that was presented. See *Burns*, 2016 IL 118973, ¶ 16.

¶ 10         The specific issue before us in this appeal is whether the police officer violated defendant's fourth amendment rights when he entered the common-area hallway of the unlocked apartment

building and conducted a dog sniff of the front door of defendant's apartment. More specifically, we must determine whether the police officer's actions constituted a search for purposes of the fourth amendment. The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV; *Burns*, 2016 IL 118973, ¶ 19. Article I, section 6, of the Illinois Constitution provides similar protection. See Ill. Const. 1970, art. I, § 6; *Burns*, 2016 IL 118973, ¶ 19. Illinois courts interpret the search and seizure clause of the Illinois Constitution in limited lockstep with that of the federal constitution. *Burns*, 2016 IL 118973, ¶ 19.

¶ 11                    I. The Two Different Approaches to Fourth Amendment Search Issues

¶ 12        There are two different approaches that a court may be called upon to apply when determining whether a police officer's actions constitute a search under the fourth amendment—a property-based approach and a privacy-based approach. See *United States v. Sweeney*, 821 F.3d 893, 899 (7th Cir. 2016). If applicable, the property-based approach should be applied first. See *Jardines*, 569 U.S. at ___, 133 S. Ct. at 1417 (stating that there is no need to apply the privacy-based approach if a violation of the fourth amendment has been found under the property-based approach); *Burns*, 2016 IL 118973, ¶¶ 27, 45 (same). The property-based approach recognizes a simple baseline of protection that is provided by the fourth amendment as it relates to the property interests specified: that when the government obtains information by physically intruding (trespassing) on a person's house, papers, or effects, a search within the original meaning of the fourth amendment has undoubtedly occurred. See *Jardines*, 569 U.S. at ___, 133 S. Ct. at 1414; *Burns*, 2016 IL 118973, ¶ 22. The question a court must ask when applying the property-based approach is whether the police officers intruded (trespassed) upon a constitutionally protected area (one of the protected properties specified in the text of the fourth amendment) to obtain the information in question. See *Jardines*, 569 U.S. at ___, 133 S. Ct. at 1414; *Burns*, 2016 IL 118973, ¶¶ 22-24. If so, a fourth amendment search has occurred. See *Jardines*, 569 U.S. at ___, 133 S. Ct. at 1414; *Burns*, 2016 IL 118973, ¶¶ 22-27.

¶ 13        The second approach that may be applied by a court to determine if a police officer's actions constitute a search under the fourth amendment is the privacy-based approach. See *Sweeney*, 821 F.3d at 899. The privacy-based approach recognizes that property rights are not the sole measurement of the fourth amendment's protections and that fourth amendment protections also extend to areas in which a person has a reasonable expectation of privacy. *Jardines*, 569 U.S. at ___, 133 S. Ct. at 1414; *Burns*, 2016 IL 118973, ¶ 23. Under the privacy-based approach, a fourth amendment search occurs when police officers intrude into an area in which a person has a reasonable expectation of privacy. See *Jardines*, 569 U.S. at ___, 133 S. Ct. at 1417; *Burns*, 2016 IL 118973, ¶ 27; *Katz v. United States*, 389 U.S. 347, 360-61 (1967) (Harlan, J., concurring). The question a court must ask when applying the privacy based approach is whether the complaining person had a reasonable expectation of privacy in the area invaded (the location or object of the alleged search) by the police. See *Katz*, 389 U.S. at 360-61 (Harlan, J., concurring). If so, a fourth amendment search has occurred. *Id.*; *Sweeney*, 821 F.3d at 899. As noted above, however, there is no need to apply the privacy-based approach if a fourth amendment search has already been found under the property-based approach (if the situation before the court is such that the police intruded upon

a constitutionally protected area to obtain the evidence in question). See *Jardines*, 569 U.S. at ___, 133 S. Ct. at 1417; *Burns*, 2016 IL 118973, ¶¶ 27, 45. That is so because the privacy-based approach adds to the fourth amendment protections provided under the property-based approach; it does not diminish those protections and is not a substitute for those protections. See *United States v. Jones*, 565 U.S. 400, 414 (2012) (Sotomayor, J., concurring); *Burns*, 2016 IL 118973, ¶ 27.

¶ 14                              II. The Fourth Amendment as Applied
                               to Common Spaces in Apartment Buildings

¶ 15        "Applying the Fourth Amendment to various common spaces in apartment buildings has been a source of considerable controversy." *Sweeney*, 821 F.3d at 898. Prior to the United States Supreme Court's decision in *Jardines*, it was generally established that a warrantless police intrusion into a common area of an apartment building did not violate the fourth amendment rights of a defendant tenant. See, *e.g.*, *People v. Smith*, 152 Ill. 2d 229, 245-46 (1992); *Sweeney*, 821 F.3d at 898-99 (listing federal Seventh Circuit cases); see also Carol A. Chase, *Cops, Canines, and Curtilage: What* Jardines *Teaches and What It Leaves Unanswered*, 52 Hous. L. Rev. 1289, 1303-09 (2015) (discussing federal cases in general). In *Jardines*, however, the United States Supreme Court held that a police dog sniff of the front door of a single family home was a search under the fourth amendment. *Jardines*, 569 U.S. at ___, 122 S. Ct. at 1417-18. The Supreme Court reached that conclusion, as stated in its majority opinion, by applying a property-based approach to the police officers' actions and by finding that the police officers had intruded (trespassed) on the curtilage of the home (the front porch) to gather the information (the alert by the drug detection dog) that was later used as the basis for obtaining a search warrant for the home. See *id.* at 1414-18.

¶ 16        The Illinois Supreme Court later applied the holding of *Jardines* in the context of a multiunit apartment building in *Burns* and found that a police dog sniff of the front door of a defendant's apartment was a search under the fourth amendment because the police officers had intruded on the curtilage (the landing outside of defendant's apartment door in a locked apartment building) of the defendant's residence in the middle of the night. *Burns*, 2016 IL 118973, ¶¶ 32-45. In reaching that conclusion, the supreme court emphasized that the apartment building where defendant lived was locked and that the common areas of the building were not open to the general public. *Id.* ¶¶ 33, 41. The court went on to comment that the facts of that case were distinguishable from situations that involved police conduct in common areas that were readily accessible to the public but did not state what the result would have been under that type of factual situation. *Id.* ¶ 41.

¶ 17                              III. The Effect of *Jardines* and *Burns*
                               on the Alleged Search in the Present Case

¶ 18        In the present case, although we are mindful of the supreme court's comment in *Burns*, we nevertheless conclude that the police officer's actions constituted a search under the fourth amendment, even though the apartment building involved was unlocked and unsecured. Other than the unlocked status of the building itself (and the time of the search, of which we have no knowledge), the officer's conduct in the present case was virtually identical to that of the officer in *Burns*. See *id.* ¶¶ 7-8. Considering the level of protection that has been afforded to the home in fourth amendment jurisprudence, especially in light of the decisions in *Jardines*

and *Burns*, we cannot conclude that a person who lives in an unlocked apartment building is entitled to less fourth amendment protection than a person who lives in a locked apartment building. See *Jardines*, 569 U.S. at ___, 122 S. Ct. at 1414; *Burns*, 2016 IL 118973, ¶ 24. The fourth amendment draws a firm line at the entrance to the home (*Kyllo*, 533 U.S. at 40) as the home is first among equals in the protected areas specified in the fourth amendment (*Jardines*, 569 U.S. at ___, 122 S. Ct. at 1414; *Burns*, 2016 IL 118973, ¶ 24). At the very core of the fourth amendment is the right of a person to retreat into his or her own home and there to be free from unreasonable governmental intrusion. *Jardines*, 569 U.S. at ___, 122 S. Ct. at 1414; *Burns*, 2016 IL 118973, ¶ 24. In providing that protection, the fourth amendment does not differentiate as to the type of home involved. See Chase, *supra*, at 1312. As the trial court noted, to reach the opposite conclusion would be to draw a distinction with an unfair difference. See *United States v. Whitaker*, 820 F.3d 849, 854 (7th Cir. 2016) (recognizing that to distinguish *Jardines* based upon the differences between the front porch of a single family home and the closed hallway of an apartment building would be to draw an arbitrary line that would apportion fourth amendment protections on grounds that correlate with income, race, and ethnicity); Chase, *supra*, at 1312 (making a similar statement).

¶ 19    Although courts will generally consider the four factors specified in *United States v. Dunn*, 480 U.S. 294, 301 (1987), in determining whether a particular area constitutes the curtilage of a home (in this case, the front door area of defendant's apartment), we need not perform an extensive analysis of the *Dunn* factors in the present case because our analysis here would be only slightly different from the supreme court's analysis of the *Dunn* factors in *Burns*. See *Burns*, 2016 IL 118973, ¶¶ 34-37. The only difference in this case would be that we would note in our analysis, as we have above, that the apartment building in the present case was unlocked, but we would still reach the same conclusion—that the common-area hallway just outside of defendant's apartment door constituted curtilage for the purposes of the fourth amendment. That defendant lacked a reasonable expectation of complete privacy in the hallway or that he lacked an absolute right to exclude all others from the hallway does not mean that defendant had no reasonable expectation of privacy against persons in the hallway snooping into his apartment using sensitive devices not available to the general public or that the police could park a trained drug-detection dog directly in front of his apartment door. See *Whitaker*, 820 F.3d at 853-84. We caution, however, that our ruling here is limited to the facts of this particular case and should not in any way be construed to mean that all apartment common areas constitute curtilage for the purposes of the fourth amendment.

¶ 20    In finding that the officer's actions in this case constituted a fourth amendment search, we reject the State's assertion that *Burns* requires a different outcome. While it is true that the court in *Burns* emphasized the fact that the apartment building in that case was locked, we do not agree that without that fact, the *Burns* court would have reached the opposite conclusion. The most that we can state is that the *Burns* court left that exact issue undecided, other than to comment that a situation involving an unlocked and unsecured common area was distinguishable from the facts that were before the court in *Burns*. See *Burns*, 2016 IL 118973, ¶ 41.

¶ 21    We acknowledge that there is precedent to support the State's assertion that a person does not have a reasonable expectation of privacy in the common area of an apartment building, that a dog sniff is not a search under the fourth amendment, and that a dog sniff is not the same as the thermal imaging scan that was condemned in *Kyllo*. Those same arguments were made by

the State in either *Jardines* or *Burns* (or both) and were rejected by the courts in those cases. We reject those arguments in this case for the same reasons. First, as noted above, there is no need to apply the privacy-based approach here because the government gained the evidence in question by intruding onto a constitutionally protected area. *Jardines*, 569 U.S. at ___, 122 S. Ct. at 1417; *Burns*, 2016 IL 118973, ¶¶ 27, 45. Second, while a police dog sniff of a vehicle or luggage in a public place may not constitute a fourth amendment search, a police dog sniff of the front door of a residence has produced a different result. See *Jardines*, 569 U.S. at ___, 122 S. Ct. at 1417-18; *Burns*, 2016 IL 118973, ¶ 44. Third, when the government uses a physical intrusion to explore the detail of a person's residence, a fourth amendment search has occurred and the type of tool that the government agents brought with them after that point (in this case, a drug-detection dog) is irrelevant. *Jardines*, 569 U.S. at ___, 122 S. Ct. at 1417.

¶ 22                    IV. Whether the Good Faith Exception
                   Applies Under the Facts of the Present Case

¶ 23    The final question that must be answered under this issue is whether the good faith exception applies in the present case to prevent the evidence in question from being suppressed. The good faith doctrine operates as an exception to the exclusionary rule. See 725 ILCS 5/114-12(b)(1), (b)(2) (West 2014); *Burns*, 2016 IL 118973, ¶¶ 48-49. The rationale behind the good faith doctrine is that since the purpose of the exclusionary rule is to deter police misconduct, if there is no police misconduct to deter, the exclusionary rule should not apply. See *Burns*, 2016 IL 118973, ¶¶ 51-52 (citing *People v. LeFlore*, 2015 IL 116799, ¶¶ 22-25). The good faith doctrine has been expanded in recent years to include those situations where a police officer acted in good faith reliance upon binding appellate precedent that specifically authorized a particular practice but was subsequently overruled. *Id.* ¶ 50. In deciding whether the good faith exception to the exclusionary rule applies in any particular case, a court must determine whether a reasonably well-trained officer would have known that the search in question was illegal in light of all of the circumstances. *Id.* ¶ 52.

¶ 24    Having reviewed the record in the present case, we find that the good faith exception to the exclusionary rule does not apply. See *Id.* ¶¶ 47-73; *Whitaker*, 820 F.3d at 854-55. Very similar good faith arguments were made by the State in both the *Burns* and the *Whitaker* cases, and, in both of those cases, the courts rejected the State's arguments for application of the good faith exception. See *Burns*, 2016 IL 118973, ¶¶ 47-73; *Whitaker*, 820 F.3d at 854-55. The same logic applies in the present case. Simply put, at the time of the search in the present case, both the United States Supreme Court and the Illinois Appellate Court had already ruled that a dog sniff of the front door of a residence was a fourth amendment search. See *Jardines*, 569 U.S. at ___, 122 S. Ct. at 1414; *People v. Burns*, 2015 IL App (4th) 140006, ¶ 46, *aff'd*, 2016 IL 118973. The police officer could not reasonably rely, therefore, on older case law decisions or decisions involving dog sniffs in other contexts to authorize the warrantless dog sniff of the front door of defendant's residence in the instant case. See *Burns*, 2016 IL 118973, ¶¶ 54-56. Nor could the officer reasonably rely on a search warrant that was issued based upon the warrantless police dog sniff of the front door of defendant's apartment, a practice that had not been specifically authorized by any established precedent. See *Id.* ¶ 69. We, therefore, reject the State's good faith argument in this case.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County.

Affirmed.

JUSTICE WRIGHT, dissenting.

The majority concludes the canine sniff in this case violated the fourth amendment based on the rationale contained in *Florida v. Jardines*, 569 U.S. 1, 133 S. Ct. 1409 (2013) and recently adopted by our supreme court in *People v. Burns*, 2016 IL 118973. I respectfully dissent.

In *Burns*, the apartment building was secured by two locked entrances located on the east and west sides of the building. These locked entrances restricted the access of the uninvited general public into the building. Nonetheless, the officers in *Burns* conducted a canine sniff in a restricted area not accessible to the general public due to the locked exterior doors of the apartment building.

Our supreme court made it very clear in *Burns* that the locked nature of the building resulted in the fourth amendment violation. The *Burns* court specifically stated: "this case is distinguishable from situations that involve police conduct in common areas readily accessible to the public." *Id.* ¶ 41. The intent of the *Burns* majority to limit the application of their decision is further evidenced by their usage of the term "locked" on more than 10 occasions throughout the opinion.

The facts of this case are very different from those presented to the court in *Burns*. This case involves police conduct in a common area readily accessible to the public. Here, the officers did not pass through any locked exterior entrances or any locked interior doorways before reaching the third-floor hallway with the canine. When the canine evaluated the air in the third-floor hallway, the canine was standing in a wholly unrestricted and readily accessible area of the building.

To warrant the constitutional protection as defendant contends, some portion of the third-floor common-area hallway must qualify as the "curtilage" under the property-based approach contemplated in *Jardines*. See *Jardines*, 569 U.S. at ___, ___, 133 S. Ct. at 1409, 1414-15. As aptly stated by Justice Garman in her separate concurrence in *Burns*, a reviewing court should employ a blended application of the property-based and privacy-based approaches to fourth amendment concerns when determining whether an area qualifies as curtilage. *Burns*, 2016 IL 118973, ¶¶ 85-87 (Garman, C.J., specially concurring).

Whether an area qualifies as curtilage depends on "whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Dunn*, 480 U.S. 294, 300 (1987) (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984)). To determine whether this small slice of the third-floor hallway should be classified as the "curtilage," I apply the *Dunn* test by considering the following four factors: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *Id.* at 301.

¶ 35    I respectfully submit only one of the *Dunn* factors points toward the existence of curtilage in this case. There is no doubt that the third-floor hallway in defendant's apartment building exists in close proximity to defendant's residence.

¶ 36    Yet, no other *Dunn* factors apply. No portion of the third-floor hallway is enclosed. Defendant was not using the area outside his doorway for any private purpose such as for a sitting or reception area for himself or his guests. Nothing other than the thickness of defendant's locked apartment door separated defendant's private area from the publicly-accessible hallway. Defendant did not position any item to cause the general public to detour around the threshold of his locked door. Lastly, and importantly, defendant took no steps to protect the exterior of his apartment door from the view or observations of people lawfully travelling back and forth throughout the unlocked apartment building.

¶ 37    Based on the application of *Dunn* factors, I conclude it was unreasonable for defendant to expect that any portion of the hallway accessible to the general public should be treated as part of defendant's home for fourth amendment purposes. Accordingly, I would hold the hallway in this completely unsecured apartment building was not curtilage in relation to defendant's leased premises.

¶ 38    The majority concedes this case is distinguishable from *Burns* but rationalizes their holding by concluding that a person who lives in an unlocked apartment building is not entitled to less fourth amendment protection than a person who lives in a locked apartment building. I respectfully disagree that all persons enjoy the same level of fourth amendment protection when leasing living quarters in a secured structure versus an entirely unsecured one. I believe "a marked difference" should be discerned "between an individual's expectation of privacy in a locked apartment building as compared to an unlocked one." *People v. Trull*, 64 Ill. App. 3d 385, 389 (1978).

¶ 39    For the preceding reasons, I respectfully conclude this particular defendant's fourth amendment rights were not violated because law enforcement did not pass through any locked exterior or interior thresholds before a drug-sniffing canine analyzed the air in a hallway readily accessible to the public.

¶ 40    I would respectfully reverse the circuit court's judgment suppressing the evidence in this case.