2018 IL App (3d) 150877

Opinion filed October 30, 2018

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
|---|---|---|
| | ) | of the 14th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Rock Island County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-15-0877 |
| | ) | Circuit No. 15-CF-290 |
| JONATHAN LINDSEY, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Michael F. Meersman, |
| | ) | Judge, presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Schmidt concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1        In April 2014, the police used a trained drug-detection dog to conduct a free air sniff of

the door handle and seams of defendant Jonathan Lindsey's motel room. The dog alerted to the

presence of drugs inside the room, and the police obtained a search warrant. During their search,

they found 4.7 grams of heroin, and Lindsey was charged with unlawful possession with intent to

deliver a controlled substance while being within 1000 feet of a school. Lindsey filed a motion to

suppress evidence, arguing that the dog sniff violated his fourth amendment rights. The trial

court denied the motion. Ultimately, the court found Lindsey guilty and entered a judgment of

conviction and a separate second judgment ordering Lindsey to pay a $3000 drug assessment fee, a $500 drug street value fine, and a $250 DNA analysis fee and to submit a DNA sample. Lindsey appealed, arguing that (1) the trial court erred when it denied his motion to suppress evidence and (2) this court should vacate his fees and fine. We reverse and remand.

¶ 2                                    FACTS

¶ 3        On April 27, 2014, Lindsey was arrested for driving while his license was suspended. While Lindsey was in custody, he told police he was staying in a motel room at American Motor Inn. He did not give the officers consent to search the room. Rock Island County sheriff deputy Jason Pena arrived at the American Motor Inn with a drug-detection dog and performed a free air sniff on the exterior of Lindsey's motel room door. The dog alerted to the presence of drugs in the room. Rock Island Police Department Detective Timothy Muehler obtained a search warrant and found 4.7 grams of a powdery substance later determined to be heroin. After the search, Lindsey admitted that he possessed the heroin. Lindsey was charged with one count of unlawful possession with intent to deliver a controlled substance while being within 1000 feet of a school (Class X felony).

¶ 4        In July 2015, Lindsey filed a motion to suppress evidence. In the motion, he argued that the dog sniff violated his fourth amendment rights because it constituted an unreasonable search of the corridor of his motel room. He, therefore, claimed that any evidence seized and any statements made to the officers subsequent to the search should be suppressed.

¶ 5        A hearing on the motion was held in September 2015. Rock Island Police Department Sergeant Shawn Slavish testified that a dog sniff was conducted on the door of room 130 at the American Motor Inn. He explained that "the door itself set back in a little alcove and as you stepped into the alcove to the right was Room 130 and I believe across the hall to that would be

2

Room 131." The door to the alcove was propped open and the area was open to the public. Pena informed Slavish that the dog had alerted the presence of drugs at the door. Afterward, the officers obtained a search warrant and searched the room.

¶ 6         Officer Pena testified that, on April 27, the Rock Island Police Department requested him to conduct a free air sniff of motel room 130. During the dog sniff, Pena explained,

> "I let him off lead and basically had him go to that side of the
> building actually checking for free air sniffs alongside that
> building. Once you reach Room 130, he changed his behavior,
> alerting to the odor of narcotics. In this particular instance what he
> did is he came up around the door handle and its seams and he—an
> alert would be that he would actually sit and lay down, which he
> did, indicating that he is in the odor of narcotics."

The dog was "within inches" of the door when he sniffed the handle and seams. The dog also searched the general area around the room but did not alert the officer about the presence of drugs until he reached room 130.

¶ 7         Kylinn Ellis testified that Lindsey was her son's father. On April 27, Ellis was in the passenger seat of her car while Lindsey was driving. The police pulled the car over, arrested Lindsey for driving without a license, and took possession of the car. Afterward, Ellis walked to American Motor Inn to charge her phone in Lindsey's motel room. When she arrived, she saw a black Suburban with tinted windows in front of the motel. She also believed someone was in the motel room because "the curtains were moving, and you can see like somebody in there" but she did not actually see a person in the room. She did not know if anyone besides Lindsey had stayed

3

in the motel room but she had seen clothes that were not Lindsey's in the room. As she walked up to the motel room, she was stopped by a detective who told her she could not enter the room.

¶ 8    The trial court did not find Ellis's testimony that she believed someone was in the motel room after Lindsey was arrested credible because she had testified that she did not see a person in the room and there could have been other causes, such as an air conditioning or heating unit, for the movement of the curtains. It also stated that the police had a right to bar Ellis from the motel room to secure the scene. Relying on the Eighth Circuit's decision in *United States v. Roby*, 122 F.3d 1120 (8th Cir. 1997), the court determined that Lindsey did not have a reasonable expectation of privacy in the corridor of his motel room because, unlike an apartment or house, the corridor of a motel room "was a public place of accommodation, and it was a public access area." The trial judge explained that there were no Illinois cases that addressed this issue, and although he agreed with some of the points discussed in the *Roby* dissent, he was not going to create new case law. Ultimately, the court denied the motion to suppress.

¶ 9    In October 2015, a stipulated bench trial was held. The court found Lindsey guilty and sentenced him to seven years' imprisonment and three years of mandatory supervised release. At sentencing, the court commented on his fines and fees, stating "I note that there's still monies owing there. The clerk is to take all the monies that is showing [*sic*] owing in these cases and reduce everything to judgment, including the costs here, because obviously, he doesn't have the ability to pay any of them and it's just silly to keep these files open just for money issues in relation to that."

¶ 10    In November 2015, the court entered two separate judgments. The first judgment did not list any fines or fees. The second judgment ordered Lindsey to pay a $3000 drug assessment and a $500 drug street value fine. It also ordered him to submit a specimen of his blood, saliva, or

4

other tissue and pay a $250 DNA analysis fee. The Illinois State Police DNA indexing lab system shows that Lindsey had submitted a swab sample on October 16, 2012. Lindsey appealed both his conviction and the imposition of fines and fees.

¶ 11                                          ANALYSIS

¶ 12                                      I. Fourth Amendment

¶ 13                             A. Reasonable Expectation of Privacy

¶ 14         Lindsey argues that the trial court's denial of his motion to suppress evidence was error because the police officer's use of a drug-detection dog near his motel room door constituted a warrantless search and, therefore, violated his fourth amendment rights. He claims that case law established that a guest in a motel room is constitutionally protected under the fourth amendment and that this rule also applies to his motel door, which is a part of the structure of the motel room. He also alleges that, pursuant to *Kyllo v. United States*, 533 U.S. 27 (2001), the dog sniff violated his fourth amendment rights because a drug-detection dog was used to explore details of the motel room not previously discernible without physical intrusion.

¶ 15         To begin, Lindsey references *Stoner v. California*, 376 U.S. 483 (1964), and *People v. Eichelberger*, 91 Ill. 2d 359 (1982), to support his argument that a guest in a motel room is entitled to constitutional protections under the fourth amendment. In *Stoner*, the United States Supreme Court established that "[n]o less than a tenant of a house, or the occupant of a room in a boarding house, [citation], a guest in a hotel room is entitled to constitutional protections against unreasonable searches and seizures." *Stoner*, 376 U.S. at 490.

¶ 16         Our supreme court in *Eichelberger* concluded that a hotel occupant's reasonable expectation of privacy is *reduced* with regard to the area immediately adjoining the room and cites *United States v. Burns*, 624 F.2d 95 (10th Cir. 1980), and *United States v. Agapito*, 620

5

F.2d 324 (2nd Cir. 1980), to support its reasoning. In *Burns*, the Tenth Circuit stated that, in the context of conversation,

> "[m]otel occupants possess the justifiable expectation that if their conversation is conducted in a manner undetectable outside their room by the electronically unaided ear, that it will go unintercepted. Contrarily, to the extent they converse in a fashion insensitive to the public, or semipublic, nature of walkways adjoining such rooms, reasonable expectations of privacy are correspondingly lessened." *Burns*, 624 F.2d at 100.

¶ 17 In *Agapito*, the Second Circuit stated that a person has a different expectation of privacy in the corridor of a hotel room than in the curtilage of a private residence. The court explained:

> " '[D]espite the fact that an individual's Fourth Amendment rights do not evaporate when he rents a motel room, the extent of privacy he is entitled to reasonably expect may very well diminish. For although a motel room shares many of the attributes of privacy of a home, it also possesses many features which distinguish it from a private residence: "A private home is quite different from a place of business or a motel cabin. A home owner or tenant has the exclusive enjoyment of his home, his garage, his barn or other buildings, and also the area under his home. But a transient occupant of a motel must share corridors, sidewalks, yards, and trees with the other occupants. Granted that a tenant has standing to protect the room he occupies, there is nevertheless an element of

6

public or shared property in motel surroundings that is entirely lacking in the enjoyment of one's home." ' " *Agapito*, 620 F.2d at 331 (quoting *United States v. Jackson*, 588 F.2d 1046, 1052 (5th Cir. 1979), quoting *Marullo v. United States*, 328 F.2d 361, 363 (5th Cir. 1964)).

¶ 18 Lindsey also cites multiple cases with varying fact patterns to support the proposition that the use of a drug-sniffing dog in the common area of a motel constitutes a fourth amendment search. In *Florida v. Jardines*, 569 U.S. 1, 3-4 (2013), the police conducted a dog sniff on the front porch of Jardines's private home. When the dog sniffed the front door, he gave a positive response for drugs, and the police obtained a search warrant. *Id.* at 4. The officers found marijuana during the search, and Jardines was charged with trafficking. *Id.* Our Supreme Court stated that the curtilage, or area immediately surrounding and associated with the home, was the "constitutionally protected extension" of the home and determined that Jardines's front porch was considered curtilage. *Id.* at 6-8. It also found that, although a visitor would have an implied license to approach the home for a brief moment, a resident does not give a police officer a "customary invitation" to use a trained police dog to investigate the area to find incriminating evidence. *Id.* at 8-9. The court declined to discuss whether the dog sniff violated Jardines's reasonable expectation of privacy. *Id.* at 11 ("The *Katz* [*v. United States*, 389 U.S. 347 (1967)] reasonable-expectations test has been *added to*, not *substituted for*, the traditional property-based understanding of the Fourth Amendment, and so is unnecessary to consider when the government gains evidence by physically intruding on constitutionally protected areas." (Emphases in original and internal quotation marks omitted.)).

¶ 19    Justice Kagan concurred, stating that if the case had reviewed Jardines's reasonable expectation of privacy, the Court's decision in *Kyllo*, would provide guidance. *Id.* at 14 (Kagan, J., concurring, joined by Ginsburg and Sotomayor, JJ.). In *Kyllo*, wherein the Court held that the police officers' use of a thermal-imaging device to detect heat from a private home constituted a search, the Court established that " 'Where, as here, the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a "search" and is presumptively unreasonable without a warrant.' " *Id.* at 14 (quoting *Kyllo*, 533 U.S. 27 at 40). Justice Kagan opined that the police officers conducted a search because the officers used a trained drug-detection dog, or a "device that is not in general public use," to explore details of Jardines's home they would not have otherwise discovered without entering the home. *Id.* at 14-15.

¶ 20    In *United States v. Whitaker*, 820 F.3d 849, 850 (7th Cir. 2016), police officers obtained permission from an apartment manager to conduct a dog sniff in a locked, shared hallway of an apartment building. The dog alerted the presence of drugs at Whitaker's apartment. *Id.* The officers obtained a search warrant, found incriminating evidence, and charged Whitaker with various drug and firearm offenses. *Id.* On appeal, Whitaker argued that the use of a drug-detection dog violated his privacy interests under *Kyllo*. *Id.* at 852. The Seventh Circuit determined that, under the *Kyllo* rule, a "trained drug-sniffing dog is a sophisticated sensing device not available to the general public." *Id.* at 853. "The dog here detected something (the presence of drugs) that otherwise would have been unknowable without entering the apartment." *Id.* The court noted that Whitaker did not have "complete" reasonable expectation of privacy in his apartment hallway. *Id.* However, "Whitaker's lack of a reasonable expectation of complete privacy in the hallway does not also mean that he had no reasonable expectation of privacy

against persons in the hallway snooping into his apartment using sensitive devices not available to the general public." *Id.* The court also stated:

> "Whitaker's lack of a right to exclude did not mean he had no right to expect certain norms of behavior in his apartment hallway. Yes, other residents and their guests (and even their dogs) can pass through the hallway. They are not entitled, though, to set up chairs and have a party in the hallway right outside the door. Similarly, the fact that a police officer might lawfully walk by and hear loud voices from inside an apartment does not mean he could put a stethoscope to the door to listen to all that is happening inside. Applied to this case, this means that because other residents might bring their dog though the hallway does not mean the police can park a sophisticated drug-sniffing dog outside an apartment door, at least without a warrant." *Id.* at 853-54 (citing *Jardines*, 569 U.S. at 9).

The court concluded that the facts presented constituted a search under the fourth amendment and that Whitaker's rights were violated when the officers conducted a warrantless search in the hallway of his apartment. *Id.* at 854.

¶ 21 In a similar analysis, our supreme court in *People v. Burns*, 2016 IL 118973, found that the police officers' warrantless use of a sniff dog at the defendant's apartment door in a locked apartment building violated the defendant's fourth amendment right because the locked apartment building was a constitutionally protected area pursuant to *Jardines*. In *People v. Bonilla*, 2017 IL App (3d) 160457, *pet. for leave to appeal allowed*, No. 122484 (Sept. 27,

9

2017), this court determined that the police officer's actions constituted a search under the fourth amendment when he entered the common area hallway of an unlocked apartment building and conducted a dog sniff of the defendant's front door. The court reached that conclusion because the common area hallway constituted curtilage under *Jardines* and *Burns*. However, both courts declined to apply the privacy-based approach because the government in both cases intruded onto constitutionally protected areas.

¶ 22    The State argues that case law establishes that a guest in a motel room is entitled to a reduced expectation of privacy. Furthermore, it claims that this court should adopt the ruling in *Roby*, 122 F.3d 1120 , as the trial court did in its decision. In *Roby*, police officers conducted a dog sniff on the floor of Roby's hotel room. *Id.* at 1122. The officers walked the dog down the hall two or three times, and the dog alerted to Roby's room. *Id.* The officers obtained a search warrant and found cocaine, and Roby was charged with possessing cocaine with intent to distribute. *Id.* at 1123. On appeal, Roby challenged the denial of his motion to suppress evidence obtained during the search of his hotel room because, *inter alia*, the dog sniff violated his fourth amendment rights. *Id.* The Eighth Circuit held that a trained dog's detection of odor in a common corridor did not violate the fourth amendment. *Id.* at 1125. It reasoned that Roby's expectation of privacy was limited in a hotel corridor because people can access the area and "[n]either those who stroll the corridor nor a sniff dog needs a warrant for such a trip." *Id.* It further noted that the fact that the dog was more skilled than a human at detecting odor does not make the dog sniff illegal. *Id.* at 1124-25. Furthermore, it stated that evidence of plain smell—similar to evidence in plain view—may be detected without a warrant. *Id.* at 1125.

¶ 23    We find that the reasoning in *Whitaker* and *Jardines* is more persuasive. Similar to a sense-enhancing technology, a trained drug-detection dog is a sophisticated sensing device not

10

available to the general public. See *Jardines*, 569 U.S. at 14-15 (Kagan, J., concurring, joined by Ginsburg and Sotomayor, JJ.); *Whitaker*, 820 F.3d at 853. In this case, the drug-detection dog was used to explore the details previously unknown in Lindsey's motel room, which the Supreme Court established was entitled to constitutional protections. See *Stoner*, 376 U.S. at 490.

¶ 24 The State argues that Lindsey's reasonable expectation of privacy is reduced with regard to the area immediately adjoining the motel room. In *Whitaker*, the court recognized that the defendant did not have a complete expectation of privacy in his apartment hallway; however, this did not mean he had "no reasonable expectation of privacy against persons in the hallway snooping into his apartment using sensitive devices not available to the general public." *Whitaker*, 820 F.3d at 853. Furthermore, in *Burns*, 624 F.2d at 100—the case our supreme court in *Eichelberger* relies on—the court stated that a motel guest has a *justifiable* expectation that "if their conversation is conducted in a manner undetectable outside their room by the electronically unaided ear, that it would go unintercepted." Lindsey had a justifiable expectation of privacy because, until Pena focused the free air sniff on the motel door and seams to detect the odor of drugs inside Lindsey's motel room, the smell was undetectable outside of the room. Therefore, we reject the State's argument and find that the dog sniff constituted a warrantless search in violation of Lindsey's fourth amendment rights.

¶ 25 B. Exclusionary Rule

¶ 26 Next, we address whether Pena's violation meets the good faith exception to the exclusionary rule. The State contends that it has met the good faith exception because the officer had no reason to believe that he was violating Lindsey's fourth amendment rights. Although the State acknowledges that the police could not rely on any binding precedent to *authorize* the dog

sniff or the search warrant, it argues, however, there is no precedent *prohibiting* the officers' actions in a hotel hallway and, if anything, the officers would have relied on *Roby* and similar cases as guidance.

¶ 27        Generally, courts will not admit evidence obtained in violation of the fourth amendment. *Burns*, 2016 IL 118973, ¶ 47. "The fruit-of-the-poisonous-tree doctrine is an outgrowth of the exclusionary rule providing that the fourth amendment violation is deemed the poisonous tree, and any evidence obtained by exploiting that violation is subject to suppression as the fruit of that poisonous tree." (Internal quotation marks omitted.) *Id.* The main purpose of the exclusionary rule is to deter future unlawful police conduct and fulfill the guarantee of the fourth amendment against unreasonable searches and seizures. *Id.*

¶ 28        The exclusionary rule is applied only in unusual cases when its application will deter future fourth amendment violations. *Id.* ¶ 49 (citing *People v. LeFlore*, 2015 IL 116799, ¶ 22). Exclusion of evidence is a court's last resort, not its first impulse. *Id.* In considering the good faith exception to the exclusionary rule applies in any case, the inquiry is "whether a reasonably well trained officer would have known that the search was illegal in light of all the circumstances." (Internal quotation marks omitted.) *Id.* ¶ 52 (quoting *LeFlore*, 2015 IL 116799, ¶ 25). "The Supreme Court expanded the good-faith exception to the exclusionary rule to include good-faith reliance upon binding appellate precedent that specifically authorized a particular practice but was subsequently overruled." *Id.* ¶ 49 (citing *Davis v. United States*, 564 U.S. 229, 241 (2011)).

¶ 29        Illinois courts have addressed the good faith exception in the context of binding authority. *Bonilla*, 2017 IL App (3d) 160457, ¶ 24 (finding that, similar to *Burns* and *Whitaker*, United States Supreme Court and Illinois Appellate Court already ruled that a dog sniff of the front door

12

of a residence was a fourth amendment search, and therefore, police could not rely on the good faith exception); *Burns*, 2016 IL 118973, ¶ 68 (holding that the good faith exception does not apply because there was no binding precedent authorizing officers' conduct except for a Fourth District case prohibiting the conduct); See also *Whitaker*, 820 F.3d at 854-55 (ruling that "no appellate decision specifically authorizes the use of a super-sensitive instrument, a drug-detecting dog, by the police outside an apartment door to investigate the inside of the apartment without a warrant," and therefore, good faith exception did not apply).

¶ 30    Here, the parties concede, and we agree, that there was no binding appellate precedent in effect at the time but subsequently overruled that Pena could have relied on to justify the dog sniff. In fact, there *was* sufficient binding precedent for him, as a reasonably well-trained officer, to know the dog sniff required a warrant. The dog sniff in this case occurred on April 27, 2015. At least four, and arguably five, cases decided prior to this dog sniff establish the proposition sufficiently that a reasonably well-trained officer should have known that conducting a warrantless air sniff to detect contents *inside* a hotel room violates the fourth amendment.

¶ 31    Fifty-one years prior to the search in this case, the United States Supreme Court decided, in *Stoner*, 376 U.S. at 490, that guests in hotel rooms, tenants in apartments, and residents in homes all have the same expectation of privacy in their personal space and are all entitled to the same constitutional protections against unreasonable search and seizure under the fourth amendment.

¶ 32    Thirty-three years prior to this search, the Illinois Supreme Court decided *Eichelberger*, 91 Ill. 2d 359, recognizing a hotel occupant's reasonable expectation of privacy in the hotel room—as had *Stoner*—but explicitly finding that expectation reduced with regard to the common area adjoining the room. In reaching that conclusion, our supreme court expressly relied

13

on two federal appeals court decisions, *Burns*, 624 F.2d at 100 ("Motel occupants possess the justifiable expectation that *if their conversation is conducted in a manner undetectable outside their room by the electronically unaided ear*, that it would go unintercepted." (Emphasis added.)), and *Agapito*, 620 F.2d at 331 ("*Granted that a tenant has standing to protect the room he occupies*, there is nevertheless an element of public or shared property in *motel surroundings* that is entirely lacking in the enjoyment of one's home." (Emphases added and internal quotation marks omitted.))

¶ 33     Fourteen years prior to Pena's search, in *Kyllo*, the Supreme Court, in a case involving the use of thermal imaging to detect activity inside a home, decided that the use of a sense-enhancing technology not available to the general public to obtain information about activities inside a home that are not visible to the naked eye and that could not be obtained without physical intrusion into the home is a search entitled to fourth amendment protection.

¶ 34     Two years prior to the Pena search, the United States Supreme Court decided in *Jardines*, 569 U.S. at 9-11, that the use of a trained drug-detection dog to sniff the area outside the defendant's private home was a fourth amendment search entitled to fourth amendment protections. The *Jardines* majority decided the case on property grounds. However, as three concurring judges noted, a trained drug-detection dog is also a sense-enhancing detection tool and its use to detect details of and activities inside a protected space that would not have been discovered without entering the home violated the defendant's reasonable expectation of privacy and would similarly constitute a fourth amendment search under a privacy analysis. *Jardines*, 569 U.S. at 14-15 (Kagan, J., concurring, joined by Ginsburg and Sotomayor, JJ.). Privacy is the basis of Lindsey's argument in this case.

14

¶ 35        Finally, in *People v. Burns*, 2015 IL App (4th) 140006, the appellate court opinion, issued shortly before Pena's search, found that a dog sniff of the frame around an apartment door—the same type of sniff as that in this case—was a search under the fourth amendment entitled to constitutional protection.

¶ 36        In sum, these decisions had clearly established at the time of Pena's dog's sniff of the door to Lindsey's motel room that the sniff violated his reasonable expectation of privacy in his motel room and could not have been undertaken without a warrant. The fact that subsequent decisions of the Illinois Supreme Court and our appellate courts have restated this fact with additional specificity and clarity does not undermine the fact that the earlier cases were quite sufficient to have apprised a reasonably well-trained officer that the execution of the Pena dog sniff without a warrant violated the fourth amendment. The evidence seized as a result of the sniff should have been suppressed on this basis.

¶ 37        Second, the evidence shows that the dog sniff was not merely "simple, isolated negligence," as argued by the State, but was a deliberately executed attempt to find drugs inside Lindsey's motel room. See *LeFlore*, 2015 IL 116799, ¶ 24 ("[w]here the particular circumstances of a case show that police acted with an objectively reasonable good-faith belief that their conduct was lawful, or when their conduct involved only simple, isolated negligence, there is no illicit conduct to deter" (internal quotation marks omitted)). The police were suspicious of Lindsey's activities because a confidential informant stated that Lindsey was selling drugs in the motel and that Lindsey had a criminal history. Subsequently, the police conducted a surveillance of Lindsey's motel. After Lindsey was arrested, the police spoke with motel staff to inquire about Lindsey's motel room. Pena and his K-9 arrived at the motel and conducted an air sniff of the door handle and seam of Lindsey's motel room to detect narcotics. Under these

circumstances, Pena's conduct, as required by *LeFlore*, was "sufficiently deliberate that deterrence is effective and sufficiently culpable that deterrence outweighs the cost of suppression." (Internal quotation marks omitted.) *Id.* We, therefore, hold that suppression of the evidence was necessary. The denial of defendant's motion to suppress is reversed, the evidence is suppressed, his conviction is vacated, and the matter is remanded for further proceedings consistent with this decision.

¶ 38                                    II. Court Fines

¶ 39        Because Lindsey's conviction has been vacated and this case is being remanded, the fines and fees issues raised by the defendant are moot. However, in the event that a petition for leave to appeal is filed and granted, we briefly address those issues. Lindsey argues that the trial court erred when it assessed a $3000 drug assessment and $500 street value fine in its written judgment because the court stated that it would not impose any fines at sentencing. He asks this court to vacate the drug assessment and street value fine. The State concedes that both fees should be vacated.

¶ 40        "When the oral pronouncement of the court and the written order conflict, the oral pronouncement of the court controls." *People v. Roberson*, 401 Ill. App. 3d 758, 774 (2010). Illinois Supreme Court Rule 615(b) allows a court to modify a written judgment to bring it into conformity with the oral pronouncement of the trial court. *People v D'Angelo*, 223 Ill. App. 3d 754, 784 (1992). Questions regarding the appropriateness of fines, fees, and costs imposed by a sentencing court are reviewed *de novo*. *People v. Ackerman*, 2014 IL App (3d) 120585, ¶ 26.

¶ 41        At sentencing, the trial court instructed the clerk to remove Lindsey's fines. However, the second judgment showed that the court assessed a $3000 drug assessment and $500 street value

16

fine. Based on the evidence presented, we vacate the $3000 drug assessment and $500 street value fine.

¶ 42                                III. DNA Analysis Fee

¶ 43        Lindsey also alleges that the trial court erred when it ordered him to submit a DNA sample and pay a $250 DNA analysis fee although he previously submitted a DNA sample and paid the fee. He asks this court to vacate the DNA analysis fee. The State concedes that this fee should be vacated.

¶ 44        Section 5-4-3(a) of the Unified Code of Corrections provides that any person convicted of felony offense must submit specimens of blood, saliva, or tissue to the Illinois Department of State Police. 730 ILCS 5/5-4-3(a) (West 2016). Section 5-4-3(j) states that if someone submits specimens of blood, saliva, or tissue, he must pay a $250 analysis fee. *Id*. § 5-4-3(j). Our supreme court has established that section 5-4-3 authorizes the $250 analysis fee only when the defendant is not currently registered in the DNA database. *People v. Marshall*, 242 Ill. 2d 285, 303 (2011). Questions regarding the appropriateness of fines, fees, and costs imposed by a sentencing court are reviewed *de novo*. *Ackerman*, 2014 IL App (3d) 120585, ¶ 26.

¶ 45        Lindsey states that he failed to preserve this issue for review. However, the State does not argue that he waived this issue and concedes to the vacatur of the analysis fee. *People v. Williams*, 193 Ill. 2d 306, 347 (2000) ("the State may waive an argument that the defendant waived an issue by failing to argue waiver in a timely manner"). Based on the Lindsey's Illinois State Police DNA form and prior convictions, it is presumed that he was previously ordered to submit a DNA sample and pay the $250 analysis fee, and therefore, the subsequent order is improper. See *People v. Leach*, 2011 IL App (1st) 090339, ¶ 38 (determining that because a

17

convicted felon is required to submit a DNA sample, it is presumed that the trial court imposed the requirement on a prior conviction). Therefore, we vacate the DNA analysis fee.

¶ 46                                    CONCLUSION

¶ 47        The judgment of the circuit court of Rock Island County is reversed and remanded.

¶ 48        Reversed and remanded; fines and fees vacated.

¶ 49        JUSTICE SCHMIDT, concurring in part and dissenting in part:

¶ 50        Even assuming that the majority correctly determined that the dog sniff in this case violated the fourth amendment (it did not), the good faith exception to the exclusionary rule applies.

¶ 51        Up to this point, courts have determined that canine sniffs of residential and apartment doors constitute fourth amendment searches. See *Jardines*, 569 U.S. 1; *Burns*, 2016 IL 118973; *Bonilla*, 2017 IL App (3d) 160457; *Whitaker*, 820 F.3d 849. No similar holding has been made regarding canine sniffs of hotel room doors. In fact, until now the relevant authority indicates that canine sniffs in the common corridors of hotels are not fourth amendment searches because a hotel tenant possesses a reduced expectation of privacy. See *Roby*, 122 F.3d 1120 (8th Cir. 1997); *Eichelberger*, 91 Ill. 2d 359; *Agapito*, 620 F.2d 324. Based on the facts of this case and the state of the law, no one can reasonably argue that the officers acted in bad faith. Accordingly, I would find the good faith exception to the exclusionary rule applies.

¶ 52        With respect to the fines and fees issues, I agree that we should accept the State's concession and vacate them. Otherwise, I would affirm.