THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL K. BALSLEY, Defendant-Appellee.

Second District   No. 2—00—1370

Opinion filed April 26, 2002.

Linda A. Giesen, State's Attorney, of Dixon (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Louis F. Pignatelli and Patrick J. Liston, both of Pignatelli, Liston & Mertes, P.C., of Rock Falls, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

The trial court granted the motion of defendant, Michael K. Balsley, to quash a warrant to search defendant's home and to suppress evidence found during the search. On appeal, the State argues that (1) where officers search curbside trash near a residence and recover contraband and documents linking a suspect and the trash to that residence, probable cause exists to search the residence and (2) during the suppression hearing, the trial court erred in admitting defendant's affidavit and thus allowing defendant to avoid testifying. We reverse.

Before the police searched defendant's home, Illinois State Police Inspector Robbie Dail filed a complaint for a search warrant. The complaint identified as the target of the proposed search the single-family dwelling at 377 Wheaton Avenue in Dixon. Dail averred that on Tuesday, July 27, 1999, he and Officer J. Gary Cooper retrieved one bag of garbage from a garbage can sitting on the side of the street and near the mailbox at 377 Wheaton. Tuesday was the day that garbage in that area usually was collected, and the garbage can was sitting in the place from which garbage typically was removed. Dail averred further that he searched the garbage bag and found "very small" pieces of cannabis, a "Com-Ed letter addressed to Mike Balsley, 377 Wheaton Avenue, Dixon, Illinois, and a NICOR bill addressed to Mike Balsley" at the same address.

Judge Payne issued a search warrant, which was executed on July 30, 1999. Thereafter, the State charged defendant with the unlawful possession of more than 5,000 grams of a substance containing cannabis (720 ILCS 550/4(g) (West 1998)) and the unlawful possession, with the intent to deliver, of more than 5,000 grams of a substance containing cannabis (720 ILCS 550/5(g) (West 1998)). Defendant moved to quash the warrant and to suppress the evidence recovered during the search of his home.

During the hearing on the motion, defendant called Dail, who testified that he went to 377 Wheaton Avenue at about 8 a.m. on July 27, 1999. Dail saw a garbage can sitting on the side of the street. He estimated that the garbage can was between 5 and 20 feet from the mailbox at that address. Dail identified a photograph of the residence. The photograph shows a mailbox next to the street. There is a tree in the yard, and the tree appears to be several feet to the right of the mailbox. Dail testified that the garbage was sitting between the mailbox and the tree. Inside the garbage can was a white garbage bag that was tied shut. The residence nearest to 377 Wheaton was about 100 yards away.

Dail testified that he had been investigating defendant since January 1998 and had most recently been to 377 Wheaton Avenue one or

two days before July 27, 1999. Dail could not remember whether any garbage was out on that day.

On July 27, Dail left 377 Wheaton and returned with Cooper at about 8:30 a.m. Dail retrieved the garbage bag and placed it in his vehicle. He drove to Cooper's home to inspect the garbage. The bag itself was knotted shut, and no twist tie was used. Because the bag was tightly tied, Dail had trouble opening it. He removed and inspected each item in the bag. In the bag, Dail found four or five very small pieces of plant material that appeared to be cannabis. The pieces were not contained in any additional packaging. A field test of one of the pieces returned a positive result for cannabis. Also, Dail found the two pieces of mail addressed to defendant at 377 Wheaton. Dail placed the cannabis in an evidence bag and discarded the remaining trash.

Dail testified further that he thought it was possible that cannabis grew wild in the area near 377 Wheaton. Dail knew that defendant owned a dog and acknowledged the possibility that the small pieces were wild cannabis that was carried into the home. Dail attached a photograph of the residence to the complaint for the search warrant and participated in executing the warrant. Cooper's testimony substantially corroborated that of Dail.

Phillip Geil testified that he had worked for Rock Valley Disposal since 1993. On July 27, 1999, he was working as a trash collector, and 377 Wheaton was on his route. Tuesday was the regular collection day for that area. Geil's garbage truck was about 30 feet long. Geil viewed the same photograph that Dail had identified earlier. The photograph showed a garbage can sitting next to the street and to the right of the tree. Geil recalled that the garbage always was left in the same location as depicted in the photograph and never near the mailbox. If the garbage were near the mailbox, Geil would have to back up his truck to reach it. On July 27, 1999, Geil removed one garbage bag from the garbage can sitting on the curb.

Over the State's objection, the trial court admitted defendant's affidavit. The affidavit stated that defendant never placed his trash near the mailbox but instead placed it at the location depicted on the photograph. The distance between that location and the place where the officers claimed to have found the garbage was 48 feet. Defendant averred further that he left the garbage at that location so that the trash collector would not have to back up his truck to reach it.

The State recalled Dail, who testified that the garbage bag he removed did not have any holes in it. There were no other bags in the garbage can.

The trial court found that, because no one observed defendant carrying the trash out to the curb, *People v. Burmeister*, 313 Ill. App. 3d

152 (2000), required that defendant's motion be granted. The State timely appealed.

█ When reviewing a trial court's ruling on a motion to suppress evidence, we accord great deference to the trial court's factual findings and will reverse them only if they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). Next, we review *de novo* the trial court's decision to suppress the evidence. *People v. Mabry*, 304 Ill. App. 3d 61, 64 (1999).

██ A judge may issue a search warrant for the seizure of evidence of a crime if a person submits a complaint "which states facts sufficient to show probable cause and which particularly describes the place or person, or both, to be searched and the things to be seized." 725 ILCS 5/108—3(a) (West 2000). By placing a trash container on the curb for collection, a defendant terminates any possessory or ownership interest in the contents. This abandonment of the trash ends the defendant's privacy expectation in it, and the fourth amendment protection against unreasonable searches and seizures does not apply. *People v. Pacheco*, 281 Ill. App. 3d 179, 183-84 (1996). Thus, the police officers properly conducted a warrantless search of defendant's trash. They could use the evidence discovered to obtain a search warrant, however, only if the complaint for the search warrant established probable cause that the curbside evidence came from the residence to be searched. *Burmeister*, 313 Ill. App. 3d at 155.

This appeal turns on the application of *Burmeister*. There, the police likewise collected trash bags from the curb in front of the defendants' residence and found small amounts of contraband. No one saw any of the defendants carry the bags out to the curb. The complaint for a search warrant was based on the search of the trash and "tips from 'anonymous sources.' " *Burmeister*, 313 Ill. App. 3d at 153. The trial court granted the motion to suppress evidence. This court held that "when an application for a search warrant is based on contraband discovered in curbside trash, probable cause exists to search the home only if the application includes a reliable eyewitness account of the defendant depositing the trash." *Burmeister*, 313 Ill. App. 3d at 159. In reaching this conclusion, the court noted that trash is readily accessible to animals, children, scavengers, and snoops. *Burmeister*, 313 Ill. App. 3d at 155. Because the warrant application failed to link the curbside contraband to the defendants or their residence, the trial court's ruling was affirmed. *Burmeister*, 313 Ill. App. 3d at 158.

The State asked the *Burmeister* court to hold that the mere presence of contraband in curbside trash creates probable cause to search the nearest residence. The court replied that "[i]f we adopted such a

rule, anyone could deposit contraband in the trash, alert the police, and watch as the victim's residence was searched." *Burmeister*, 313 Ill. App. 3d at 158.

■ Relying on the reasoning set forth in *State v. Erickson*, 496 N.W.2d 555 (N.D. 1993), the State argues that *Burmeister* is distinguishable. We agree. In *Erickson*, the trash retrieved from a Dumpster behind the defendant's home contained a traffic ticket issued to the defendant, a letter addressed to him, and evidence of cannabis trafficking. The court held that the evidence supplied a sufficient nexus between the contraband, the defendant, and the home to be searched to support a finding of probable cause. *Erickson*, 496 N.W.2d at 559; see also *State v. Bordner*, 53 S.W.3d 179, 182 (Mo. App. 2001) (probable cause to search defendant's home existed where search of trash outside defendant's home revealed products commonly used to manufacture methamphetamine and police received reports that defendant was using and manufacturing the drug in his home).

The *Burmeister* court concluded that it did not need to decide whether to follow *Erickson* because *Erickson* was distinguishable. *Burmeister*, 313 Ill. App. 3d at 157. In *Burmeister*, there was no evidence that the trash contained any "indices of residency," such as mail, linking the trash to the defendants' residence. *Burmeister*, 313 Ill. App. 3d at 157.

Although this cause is very similar to *Burmeister*, we conclude that it is distinguishable on its facts. The *Burmeister* court held that where there are no "indices of residency," a reliable eyewitness account of the suspect depositing the trash is required to establish probable cause to search the suspect's home. Because such evidence was present here, the trial court incorrectly applied *Burmeister* and granted defendant's motion to suppress.

Here, the testimony of the witnesses allays the *Burmeister* court's clearly expressed concern about tampering. The garbage bag was tightly tied shut, and there was no evidence of tampering.

In summary, the facts disclosed at the hearing are sufficient to support the well-established legal principles for establishing probable cause and to distinguish this case from *Burmeister*. These facts include the location of the garbage in relation to the location of the residence, the nature of the residential area, the amount of cannabis, the identifiers inside the garbage bag, and the manner in which the garbage bag was secured and its condition.

The judgment of the circuit court of Lee County is reversed.

Reversed.

BOWMAN and KAPALA, JJ., concur.