2023 IL App (2d) 220457-U
No. 2-22-0457
Order filed October 3, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-527 |
| HECTOR REYNA, SR., | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in denying defendant's motion to suppress evidence. The warrant was supported by probable cause. Affirmed.

¶ 2    Following a stipulated bench trial, defendant, Hector Reyna, Sr., was convicted of unlawful possession of cannabis with intent to deliver. 720 ILCS 550/5(e) (West 2020). The trial court denied defendant's posttrial motion and sentenced him to 48 months' probation. He appeals, arguing that the trial court erred in denying his motion to quash arrest and suppress evidence, where there was no probable cause to obtain the search warrant and where the good-faith exception to the exclusionary rule does not apply. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Motion to Suppress

¶ 5     The affidavit for the March 9, 2020, complaint for a search warrant, attested by Sergeant Steven Jones of the Kane County Sheriff's Office, stated that, in December 2019, the sheriff's office received an anonymous tip that defendant, who lived at 237 Parkside Avenue in Aurora (the target address) was involved in the felonious possession and sales of narcotics and/or cannabis. On February 14, 2020, Jones and two other sheriff's personnel conducted an initial trash pull at the target address. They searched a green trash container in the roadway directly in front of the residence, which resulted in the recovery of a pocketbook-sized piece of paper with names and numbers written next to them, along with an ATM bank withdrawal slip. On March 6, 2020, the sheriff's office conducted a second trash pull at the target address, during which they recovered three identical plastic garbage bags that were tied off at the top with "ordinary bag cinching string." Inside one of the bags were two empty vacuum sealer storage bags that are commonly sealed with a heat sealer. Each one was about 12 by 18 inches, each of the bags emitted a strong odor of cannabis, and each contained a green leafy substance, a sample of which taken from each bag field tested positive for cannabis. The same cinched bag that contained the two vacuum sealer bags also contained two receipts for Amigo Premium Finance with the name "Hector Reyna" on each.

¶ 6     Jones further attested that defendant's driver's license lists the target address as his address. A LEADS query showed no record of defendant having been issued a medical cannabis card. Inquiry into defendant's criminal history showed that he had five previous arrests for "dangerous drugs," two arrests for weapons offenses, three arrests for assault, one arrest for burglary, and three arrests for "larceny." Jones attested that, based on his experience, bags of the type and size recovered from the second trash pull "are commonly used in the packaging of pounds of cannabis."

The pounds of cannabis are then separated into smaller amounts for sale. He also attested that there were no manufacturer markings or labels on the packaging consistent with "cannabis legally manufactured and packaged for sale to legal dispensaries." Also, "the quantity of cannabis found in this type of packaging is beyond the threshold of personal use and therefore beyond the threshold established by the Cannabis Regulation and Tax Act." Jones attested that, based on his training and experience and the facts learned from the investigation, he believed the target address to be a source house of illegal drug activity.

¶ 7 On March 9, 2020, Judge Michael Noland signed the search warrant for the target address, as well as the person of defendant (born December 24, 1966). The search was conducted on March 10, 2020, and resulted in the seizure of 49 individual bags of suspected cannabis edibles, 12 individual bags of plant material that later tested positive for cannabis, over $11,000 in cash, two scales, 1.8 grams of cocaine, and a loaded .38 revolver. All of the items were found in the bedroom identified as defendant's bedroom. Defendant and his adult son, Hector Reyna, Jr., were arrested.

¶ 8 On October 22, 2020, defendant was charged with unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2020)) (count I), unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)) (count II), and unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2020)) (count III). Before trial, defendant moved to quash the search warrant and suppress the evidence and statements resulting from an allegedly illegal search and seizure because the search warrant was not supported by probable cause. Specifically, defendant asserted that (1) the anonymous tip lacked indicia of reliability, was conclusory, and lacked first-hand detailed descriptions of any criminal activity and the basis of the informant's knowledge was unknown; (2) the tip was not corroborated by the trash pulls, which did not yield an amount of cannabis that would constitute a violation of either the Illinois Controlled Substances

Act (720 ILCS 570/100 *et seq.* (West 2020)) or the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 2020)); and (3) the good-faith exception to the exclusionary rule did not apply, because the affidavit supporting the complaint did not provide a substantial basis for determining the existence of probable cause.

¶ 9    On September 1, 2021, a hearing was held on defendant's motion.  No witnesses were called.  Defendant argued that the affidavit did not specify Hector Reyna's age, merely referred to an anonymous tip, referred to December 2019 without specifying a precise date and, thus, was not specific and was less reliable than information developed from an informant.  He further argued that the affidavit did not specify how the anonymous tip was made, to whom it was made, how the tipster came about the information, or when the tipster acquired the information.  Addressing the first trash pull, defendant argued that the recovered items were ordinary household items. Defendant also noted that, on January 1, 2020, recreational possession of up to 30 grams of flower cannabis was legalized.  410 ILCS 705/10-5(a)(1), 10-10(a)(1) (West 2020).  As to the second trash pull, he argued that the amount of cannabis in the bags was not specified, and, where, at this time, it is legal to possess up to 30 grams of cannabis, there was no evidence of any illegal activity. Defendant also noted that there are 28 grams in one ounce, 30 grams takes up a large volume, and there was no indication of the size of 30-gram packaging.

¶ 10    The State argued that the bags were of the type in which pounds of cannabis are stored, there was probable cause, and, even if the affidavit was insufficient, the good-faith exception to the exclusionary rule applied because Jones acknowledged the change in the law.

¶ 11    On September 30, 2021, the trial court denied defendant's motion, finding that the staleness of the initial tip was not fatal to a probable cause finding, because it provided a name connected to an address, which was corroborated.  The court stated that possession of cannabis was not

completely legal and that, in certain circumstances, it was still contraband. The court also noted that requiring law enforcement officers to determine the amount of cannabis possessed before any search would render impossible the enforcement of cannabis statutes. The totality of the circumstances, the court determined, established probable cause. The court also found that the good-faith exception applied. Subsequently, the court denied defendant's motion to reconsider.

¶ 12                                B. Stipulated Bench Trial

¶ 13    The parties agreed to a stipulated bench trial and presented to the court an agreed stipulation to the facts that would be presented by the State, but not that there was sufficient evidence to convict defendant. The stipulation stated that the search of the bedroom in the northeast corner of the target address resulted in the recovery of a loaded .38 revolver, a clear plastic bag containing powder, 49 bags containing suspected cannabis edibles, 12 bags containing plant material, 2 black digital scales, and two bundles of United States currency totaling $11,160. There were also indicia of defendant occupying the bedroom, including photograph identification, mail, and a wallet with debit cards. Defendant told sheriff's personnel that he was the sole occupant of the bedroom. Defendant was advised of his rights and gave a recorded statement, wherein he stated that he possessed the items recovered from the bedroom and that he delivers cannabis to others.

¶ 14    The stipulation also stated that Detective Sergeant Ryan Monaghan would testify that, based on his training and experience, the recovered cannabis was not for personal use but, rather, likely to be delivered to others. His opinion would be based on the items seized, as well as defendant's statement during the recorded interview. The stipulation also stated that, if called to testify, forensic scientist Brial Trost would be qualified as an expert witness in testing and identifying controlled substances and cannabis. He would testify that, as part of his employment with the Illinois State Police forensic laboratory, he tested the powder, edibles, and plant material.

The powder weighed 1.8 grams and contained cocaine. The edibles weighed 960.5 grams, of which 105.5 grams of cookies were tested and found to contain cannabis. The plant material weighed 408 grams and contained cannabis. The parties stipulated that the proper chain of custody was maintained and that the test results were obtained using procedures accepted in the scientific community.

¶ 15    The trial court granted the State's motion to nol pros counts II and III, thus, proceeding on the charge of unlawful possession of cannabis with intent to deliver.

¶ 16    The court found defendant guilty of possession with intent to deliver more than 500 grams but not more than 2000 grams of any substance containing cannabis, a Class 2 felony. 720 ILCS 550/5(e) (West 2020). Defendant moved for a new trial, arguing that the court erred in denying his motion to suppress and challenging the sufficiency of the evidence. The court denied the motion and sentenced defendant to 48 months' probation. Defendant appeals.

¶ 17                                II. ANALYSIS

¶ 18    Defendant argues first that the trial court improperly denied his motion to suppress, where there was no probable cause to support the warrant. Because the State's evidence without the suppressed evidence would have been insufficient to support his conviction, defendant contends, his conviction should be reversed outright. Second, he argues that the good-faith exception to the exclusionary rule does not apply and that his conviction should be reversed, because it was objectively unreasonable for the police to believe in the warrant's validity. For the following reasons, we conclude that there was probable cause to issue the search warrant and we do not reach the good-faith argument.

¶ 19    Initially, we note that we have jurisdiction to consider this appeal. Defendant stipulated to the evidence but not to his guilt. See *People v. Weaver*, 2013 IL App (3d) 130054, ¶ 18 (noting

the two types of stipulated bench trials: one in which the defendant stipulates to the evidence but not to guilt, and the other where the defendant stipulates to the sufficiency of the evidence, which is tantamount to a guilty plea). Thus, here, compliance with Illinois Supreme Court Rules 402 and 604(d) was not required. *Id.* ¶¶ 19-20; see Ill. S. Ct. R. 402 (eff. July 1, 1997) (requiring admonishments where stipulated bench trial is tantamount to a guilty plea); Ill. S. Ct. R. 604(d) (eff. July 1, 2006) (requiring filing of motion to withdraw guilty plea and vacate judgment as condition precedent to an appeal).

¶ 20    A trial court's ruling on a motion to suppress presents questions of both fact and law. *People v. Manzo*, 2018 IL 122761, ¶ 25. A trial court's factual findings are given deference and will be reversed only when they are against the manifest weight of the evidence. *Id.* A finding is against the manifest weight of the evidence where it is unreasonable. *People v. Cardona*, 2012 IL App (2d) 100542, ¶ 37. We review *de novo* the trial court's determination on whether the evidence should be suppressed. *People v. Bonilla*, 2018 IL 122484, ¶ 8.

¶ 21    The fourth amendment to the United States Constitution, made applicable to state officials through the fourteenth amendment to the United States Constitution, provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV.

¶ 22    Similarly, the search and seizure clause of the Illinois Constitution provides:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or

interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, § 6.

¶ 23 The fourth amendment and the Illinois search and seizure clause set forth two underlying requirements: that searches and seizures must be reasonable and that probable cause must support search warrants. *Manzo*, 2018 IL 122761, ¶ 28.

"Pursuant to federal and state warrant requirements, a detached judicial officer must resolve the question of whether probable cause exists to justify issuing a warrant. Whether probable cause exists in a particular case turns on the totality of the circumstances and facts known to the officers and court when the warrant is applied for. Accordingly, probable cause exists in a particular case when the totality of the facts and circumstances within the affiant's knowledge at the time the warrant is applied for was sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched. It is the probability of criminal activity, rather than proof beyond a reasonable doubt, that is the standard for determining whether probable cause is present." (Internal quotation marks and citations omitted.) *Id.* ¶ 29.

¶ 24 "A reviewing court must not substitute its judgment for that of the magistrate in construing an affidavit but must instead merely decide whether the magistrate had a substantial basis for concluding that probable cause existed." *Id.* ¶ 31. Further, "in determining whether an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to the warrants." *Id.*

¶ 25 Defendant argues that the totality of the circumstances shows that there was a lack of probable cause to obtain the search warrant, because the December 2019 anonymous tip that

initiated the police investigation lacked specific details and was stale by the time the search warrant was obtained in March 2020. He also contends that the results of the trash pull outside the target address likewise did not support probable cause.

¶ 26    Specifically, defendant notes that the affidavit stated that the anonymous tip was originally made in December 2019, with no specific date given. The affidavit gave no information as to how the tipster learned of the information that they gave the police or whether they were ever inside the target address. Nor was there, defendant notes, any allegation that the anonymous tipster purchased cannabis from the target address or witnessed others doing so. Defendant maintains that the changes to Illinois cannabis law between December 2019 and March 2020 are critical to the staleness issue. He notes that, as of January 1, 2020, the Cannabis Regulation and Tax Act legalized the possession of up to 30 grams of cannabis for any Illinois resident age 21 or older. 410 ILCS 705/10-5(a)(1), 10-10(a)(1) (West 2020). Thus, this was the law at the time the search warrant was issued and executed in March 2020, but not at the time of the anonymous tip. Defendant contends that, given the sparseness of the detail regarding what the tipster may have actually seen inside the target address, the tip does not indicate whether or not defendant allegedly possessed a quantity of cannabis that would have been illegal at the time of the issuance of the search warrant.

¶ 27    Relying on *People v. Burmeister*, 313 Ill. App. 3d 152, 157 (2000), defendant also argues that there is so little detail about the tipster and the circumstances under which they made their supposed observations that there is no evidence they are reliable or even exist. The police, he contends, did not purport to have conducted any surveillance of the target address, to have witnessed people coming and going from the address, or to have observed anything that would have supported the tip, beyond the later trash pulls. Defendant argues that, while the evidence

found in the trash pulls corroborated that "Hector Reyna" likely lived at the target address, the evidence did not provide probable cause that he was "selling cannabis." Jones's affidavit did not mention, defendant asserts, the amount of "leafy green substance" found in the bags, and it could have been nothing more than residue.

¶ 28    Defendant also argues that the results of the trash pulls did not support probable cause. Addressing the court's findings concerning the two 12 by 18-inch bags, specifically that they were similar to the type of packaging that often held "pounds of cannabis" and that they would hold more than 30 grams of cannabis as allowed under the statute, defendant contends that there was no evidence that the bags actually ever contained more than 30 grams or that defendant possessed the bags when they held  more than an unknown amount that the police recovered from the trash pull. Defendant asserts that the fact that the size of the bags indicates that they could hold more cannabis than the threshold for personal use is not a strong indicator that they did hold that amount at one time. Further, defendant argues that heat-sealed bags can be used for food storage and other innocuous purposes.

¶ 29    We conclude that the trial court did not err in determining that there was probable cause for the search warrant. Further the court's factual findings were not against the manifest weight of the evidence.

¶ 30    " 'Staleness' refers to the amount of time that has elapsed between the facts alleged in the affidavit in support of the search warrant and issuance of the warrant." *People v. Beck*, 306 Ill. App. 3d 172, 179 (1999). "A warrant is stale when too much time has elapsed between the facts alleged in the affidavit in support of the search warrant and the issuance of the warrant." *People v. Donath*, 357 Ill. App. 3d 57, 64 (2005). There is no arbitrary cutoff point expressed in days or weeks beyond which probable cause ceases to exist. *Id.*

¶ 31    "[A] determination of probable cause is governed by commonsense, practical considerations, and not by technical legal rules." *People v. Sims*, 192 Ill. 2d 592, 615 (2000). "[P]robable cause is not certainty, and it need not rule out other possibilities." *People v. Parlier*, 2023 IL App (4th) 220091, ¶ 50. Further, it "does not require an officer to rule out any innocent explanations for suspicious facts." *People v. Hill*, 2020 IL 124595, ¶ 24.

¶ 32    We disagree with defendant that the trial court's reliance on the anonymous tip did not support a probable cause determination. The tip was only one element in the complaint for the search warrant. The totality of the circumstances supported a probable cause determination.

¶ 33    The trial court acknowledged the staleness of the tip but found that it was not fatal to a probable cause finding, because it connected a name to an address, which was corroborated. This determination was not erroneous. The anonymous tip was received, as Jones averred, in December 2019, about three months before the second trash pull and the complaint for the search warrant. It related that defendant, who resided at the target address—237 Parkside Avenue in Aurora—was involved in the felonious possession and sale of narcotics and/or cannabis. Police used driver's license and LEADS searches to confirm that defendant resided at the target address. That is, police confirmed the tipster's information that defendant resided there. The first trash pull, on February 14, 2020, did not result in the recovery of valuable information, but the second trash pull, on March 6, 2020, only three days before the search warrant was issued, resulted in the recovery of receipts from Amigo Premium Finance with the name "Hector Reyna" on them.

¶ 34    The second trash pull also resulted in the recovery of three identical plastic garbage bags. They were tied at the top with "ordinary bag cinching string," and inside one bag were two empty vacuum sealer storage bags that are commonly sealed with heat sealer. Each of the storage bags was about 12 by 18 inches, and each emitted, according to Jones, a strong odor of cannabis. Each

also contained a green leafy substance, a sample from each bag of which field tested positive for cannabis. Jones further averred that, based on his training and experience, bags of the type and size found in the trash pull "are commonly used in the packaging of pounds of cannabis," which are then separated into smaller amounts for sale. He also averred that there were no manufacturer markings or labels on the packaging that would reflect "cannabis legally manufactured and packaged for sale to legal dispensaries." Jones stated that "the quantity of cannabis found in this type of packaging is beyond the threshold for personal use and therefore beyond the threshold established by the Cannabis Regulation and Tax Act." Jones averred that he believed the target address to be a source house of illegal drug activity and further averred that, based on his training and experience, it is common for individuals involved in illegal drug possession and sales to meet for brief amounts of time in private locations to exchange money and/or illegal drugs. The foregoing established probable cause to issue the search warrant.

¶ 35    In *Burmeister*, upon which defendant relies, this court, in consolidated appeals, affirmed the suppression of evidence of cocaine trafficking in the defendants' home. *Id.* at 159. In the complaint for a search warrant, police did not allege that one of the defendants had any connection to the residence and mistakenly noted that the home was on the east side of the street when it was on the west side. Further, the police stated that their suspicions were supported by anonymous tips and an investigation by unnamed police officers. Officers also collected garbage on three consecutive trash days from the residence. They found several black plastic garbage bags. The first search resulted in the retrieval of one 4½-inch straw and plastic baggies containing a white powdery substance that field tested positive for cocaine. The second search disclosed two clear plastic bags with their corners missing and that had a white powdery residue that field tested positive for the presence of cocaine and indices. The third search resulted in the retrieval of one

rolled-up tissue with residue that field tested positive for cocaine. The police applied for the warrant two days after the third search. The defendants denied using black trash bags because their use was prohibited by trash collection rules, and they submitted photos of the blue trash bin they used.

¶ 36 This court concluded that the trial court's finding that the defendants did not use the black trash bags was not against the manifest weight of the evidence. *Id.* at 154. Further, we held that the police agent's complaint did not state facts establishing probable cause and it did not particularly describe the premises to be searched. *Id.* at 155. We noted that the police properly conducted a warrantless search of the defendants' trash because the trash was discarded in a public place where they could have no expectation of privacy in the abandoned property. *Id.* at 155. However, we concluded, the police could not use the evidence discovered to obtain a search warrant unless the application established probable cause that the curbside evidence came from the target residence. *Id.* There was no eyewitness account of the defendants dumping the trash, for example. *Id.* at 155-56. We rejected the State's argument that there were indices of residency in the defendants' trash, noting that the police's warrant application did not describe any such indices the police allegedly discovered in the defendants' trash. *Id.* at 157. Further, addressing the anonymous tips, we noted that there is no presumption of reliability to an anonymous informant. *Id.* We also noted that the veracity and reliability of the source of the information in the search warrant are important considerations in assessing if there is probable cause for the issuance of a warrant. *Id.* This court held that there was no evidence that the anonymous sources were reliable or that they even existed. *Id.* Also, their information was conclusory and lacked detail. *Id.* at 157-58. "Moreover, the independent police investigation does not overcome the

unreliability of the anonymous tips." *Id.* at 158. The application did not link the recovered items to the defendants or their residence. *Id.*

¶ 37    *Burmeister* is distinguishable from this case. Here, there were sufficient indices of residency. Jones participated in the trash pulls, and the receipts with the name "Hector Reyna" recovered from the trash pulls linked defendant to the target address. Further, Jones verified, via driver's license and LEADS searches, that "Hector Reyna" lived at the target address. See also *People v. Balsley*, 329 Ill. App. 3d 184, 187-88 (2002) (affidavit stated police collected a garbage bag from a garbage can on the side of the street; can was near the mailbox of a dwelling on a day that garbage in the area was usually collected, and police found tiny pieces of cannabis and two pieces of mail from utility companies addressed to the defendant; held that there were "indices of residency" in the bag linking the trash to the defendant's residence, and it was not necessary for a reliable eyewitness to have seen the defendant deposit the trash in order for there to be probable cause to search the defendant's home).

¶ 38    We reject defendant's argument concerning the size of the vacuum sealer bags and the inference that they would hold more than 30 grams of cannabis. The leafy green substance found in each bag field tested positive for cannabis, and the bags did not contain labels or manufacturer markings. See 410 ILCS 705/55-21 (West 2022) (requiring labeling on all cannabis products legally manufactured and packaged for sale). Jones was not required to rule out the possibility that the bags were merely used to store legal amounts of cannabis or remnants thereof. *Parlier*, 2023 IL App (4th) 220091, ¶ 50 ("probable cause is not certainty, and it need not rule out other possibilities"). Jones averred that, based on his training and experience, the bags of the type recovered are commonly used in the packaging of pounds of cannabis before being separated into

smaller amounts for sale. A reasonable officer could have concluded that a personal-use quantity of cannabis would not have been stored in a 12 by 18-inch vacuum sealer bag.

¶ 39    Defendant argues that the trial court erred in relying on *People v. McGovern*, 2021 IL App (2d) 190398-U, wherein this court upheld a probable cause finding based on the fact that the police had found "small amounts of cannabis" in the defendant's garbage. *Id.* ¶¶ 19-27. This court determined that, because the knowing possession of cannabis was still illegal at the time of the incident—2017—the small amount of cannabis found in the defendant's trash was "sufficient to provide probable cause that [the] defendant possessed cannabis illegally." *Id.* ¶ 26. Defendant notes that, in 2017, the legal threshold was possession of less than 10 grams of cannabis. *Id.* (citing 720 ILCS 550/4(a) (West 2016)). He contends that *McGovern* is inapposite to this case, where the threshold is now up to 30 grams for legal personal use and, thus, cannabis cannot automatically be considered evidence of "contraband."

¶ 40    We reject defendant's argument. Section 4 of the Cannabis Control Act provides, "[e]xcept as otherwise provided in the Cannabis Regulation and Tax Act and the Industrial Hemp Act, it is unlawful for any person knowingly to possess cannabis." 720 ILCS 550/4 (West 2020). Thus, knowing cannabis possession is illegal, except, as relevant here, as provided in the Cannabis Regulation and Tax Act. That statute provides, as of January 1, 2020, that possession of up to 30 grams of cannabis by an Illinois resident age 21 or older is not a criminal offense. 410 ILCS 705/10-5(a)(1), 10-10(a)(1) (West 2020).[1]

---

[1]Thirty grams equals about 1.05 ounces. See, *e.g.*, *Walker v. State*, 962 So. 2d 39, 43 (Miss. Ct. App. 2006). One pound equals about 453 grams. See, *e.g.*, 16 C.F.R. ¶ 500.19 (2022).

"[S]imply because cannabis may be legal in some circumstances, does not mean that it is not unlawful in others. See *People v. Molina*, 2022 IL App (4th) 220152, ¶ 41 ('Just because [a] defendant can legally possess some amounts of cannabis under specified conditions does not mean that all forms of possession are presumed to be legal.'). As we stated in *Molina*, '[r]egardless of recent changes in the law legalizing possession of small amounts of cannabis, there are still, among other things, (1) illegal ways to transport it, (2) illegal places to consume it, and (3) illegal amounts of it to possess.' *Id.* ¶ 43." *People v. Mallery*, 2023 IL App (4th) 220528, ¶ 41.

Thus, it is not necessarily the case that "cannabis can no longer be considered contraband in any context because certain amounts are legal to possess." *Mallery*, 2023 IL App (4th) 220528, ¶ 45.

¶ 41    Jones was presumably aware of the change in the threshold for legal possession between December 2019 and March 2020, and, based on his training and experience, believed that the bags could hold over the threshold legal amount. The trial court did not err in crediting this statement. Further, the fact that the decriminalized amount of cannabis increased from 10 to 30 grams between the time of the anonymous tip and the issuance of the search warrant does not compel a conclusion that there was no probable cause, because the possession of cannabis, in certain circumstances, remains unlawful. 720 ILCS 550/4 (West 2020). Jones averred that defendant was not issued a medical cannabis card and that the size of the vacuum sealer bags, which contained an unspecified amount of a green leafy substance that field tested positive for cannabis, were, based on his training and experience, "commonly used in the packaging of pounds of cannabis," which are then separated into smaller amounts for sale. Further, the bags contained no labels or markings reflecting legal manufacturing and packaging for sale to dispensaries. The vacuum sealer bags

were found in trash bags that contained indicia of defendant's residency, subsequently confirmed by driver's license and LEADS searches, at the target address.

¶ 42    Based on the foregoing facts and circumstances, there was sufficient probable cause for the search warrant.  Because we conclude that the search warrant was based on sufficient probable cause, we need not reach the issue of whether the good-faith exception applies.  *People v. Padilla*, 2021 IL App (1st) 171632, ¶ 112.

¶ 43                                    III. CONCLUSION

¶ 44    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 45    Affirmed.